ORAL ARGUMENT NOT YET SCHEDULED

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 14-7001

| | |
|---|---|
| BERRY LAW PLLC | ) |
| | ) |
| Appellant/Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| KRAFT FOODS GROUP, INC. | ) |
| | ) |
| Appellee/Defendant | ) |

Appeal from the United States District Court for the District of Columbia
Civil Action No. 13-cv-00475 (RBW)

**BRIEF OF APPELLANT/PLAINTIFF**

R. Stephen Berry
BERRY LAW PLLC
1717 Pennsylvania Avenue, NW
Suite 850
Washington, DC 20006
Tel: (202) 296-3020
Email: sberry@berrylawpllc.com

*Attorney for Appellant/Plaintiff*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

The following are parties:
Berry Law PLLC - Plaintiff-Appellant
Kraft Foods Group, Inc. - Defendant-Appellee

Under review is the Honorable Reggie B. Walton's Order Granting Motion to Dismiss and Closing Case (Dkt. No. 14) on December 11, 2013. The Opinion and Order appears at Tab 2 of the Deferred Appendix and has not been officially reported as of this date. This matter has not been before any other court and there are no pending cases related to this fee dispute.

# TABLE OF CONTENTS

**Page**

Certificate as to Parties, Rulings, and Related Cases . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.    The District Court Manifestly Errs by Ignoring Clear Allegations and Failing to "Draw Every Reasonable Inference" Liberally in Plaintiff's Favor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     A.    The Claim of Implied-Contract-In-Fact/Benefit Conferred . . . . . . . . 9

     B.    The Claim of Quasi Contract/Unjust Enrichment . . . . . . . . . . . . . 16

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements . . . . . . . . . . . . . . . . . . . . . . . . 20

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

**Page**

## Cases:

*4934, Inc. v. District of Columbia Dept. of Employment Services,*
605 A.2d 50 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*\*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

*\*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . 11, 15, 16

*Bloomgarden v. Coyer,* 479 F.2d 201 (D.C. Cir. 1973) . . . . . . . . . . . . . 16 n.4, 18

*Brown v. Brown*, 524 A.2d 1184 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . 18

*Dial Corporation et al. v. News Corporation et. al*, Civ. No. 13-06802 (WHP)
(S.D.N.Y, filed Dec. 21, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14 n.3

*Floorgraphics, Inc. v. News America Marketing In-store Services, Inc.,*
Civ. No. 04-3500 (D.N.J., filed July 19, 2004) . . . . . . . . . . . . . . . . . . . . . . 12 n.1

*Fred Esra Co. v. Pedas*, 682 A.2d 173 (D.C. Ct. App. 1996) . . . . . . . . . . . . . . . 9

*In Re: Vitamins Antitrust, et al. v. Lead Defendants, et al.*, Civ. No.
1:99-mc-00197-TFH (D.D.C., filed May 27, 1999) . . . . . . . . . . . . . . . . . . 13-14

*Insignia Systems, Inc. v. News America Marketing In-Store, Inc.,*
661 F. Supp. 2d 1039 (D. Minn. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 n.1

*Kraft Foods Global, Inc., et al. v. United Egg Producers, Inc. et al.,*
Civ. No. 2:12-cv-00088-GP (E.D. Pa., transferred Jan. 9, 2012) . . . . . . . . . . . . 13

\*Authorities upon which we chiefly rely are marked with asterisks.

**Page**

*Kraft Foods Group Inc., et al. v. Sea Star Line LLC, et al.*, Civ. No. 2:12-cv-01018-CWH (D.S.C., filed April 13, 2012) . . . . . . . . . . . . . . . . . . . . . . . 13

*McWilliams Ballard, Inc. v. Level 2 Dev.*, 697 F. Supp. 2d 101 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17 n.4

*Nat'l Air Traffic Controllers Ass'n, AFL–CIO v. Fed. Serv. Impasses Panel*, 606 F.3d 780 (D.C. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Proctor & Gamble Mfg, et al. v. Archer Daniels Mid. et al.*, Civ. No. 3:97-cv-02155-FMS (N.D. Ca., filed June 9, 1997) . . . . . . . . . . . . . . . . . . . . . . . 14

*Talenti v. Clinton,* 102 F.3d 573 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 8, 10

*Theme Productions, Inc. v. News America Marketing FSI,* 546 F.3d 991 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 n.1

*Thomas v. Principi,* 394 F.3d 970 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . 8, 10

*Tooley v. Napolitano,* 556 F.3d 836 (D.C. Cir. 2009) . . . . . . . . . . . . . . . . . 11, 18

*United States v. Dancy,* 510 F. 2d 779 (D.C. Cir. 1975) . . . . . . . . . . . . . . . . 14 n.2

*United States v. Fergueson*, 681 F.3d 826 (6th Cir. 2012) . . . . . . . . . . . . . . . 14 n.2

*Valassis Communications, Inc. v. News America Marketing, Inc.*, No. 06-10240 (E.D. Mich., filed January 18, 2006) . . . . . . . . . . . . . . . . . . . 12 n.1

*Valassis Communications, Inc. v. News America Marketing, Inc.*, No. 07-706645-CZ (Mich. Cir. Ct. Wayne Cty, filed March 9, 2007) . . . . . . 12 n.1

*Vereen v. Clayborne*, 623 A.2d 1190 (D.C. Ct. App.1993) . . . . . . . . . . . . . . 17 n.4

**Page**

**Statutes and Other Authorities**

28 U.S.C. § 41 ................................................... 1

28 U.S.C. § 1291 ................................................ 1

28 U.S.C. § 1294 ................................................ 1

28 U.S.C. § 1332(a) ............................................. 1

Fed. R. App. P. 4(a)(1) ......................................... 1

Fed. R. Evid. 201(b)(2) ...................................... 14 n.2

Wright & Graham, *Federal Practice and Procedure 2d* §5110.1 ......... 14 n.2

Wright & Miller, *Federal Practice & Procedure 3d* §1357 ................. 10

## JURISDICTIONAL STATEMENT

The District Court had diversity jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds in sum or value $75,000. The District Court entered an appealable final judgment and this Court has appellate jurisdiction under 28 U.S.C. §§ 41, 1291, and 1294. The District Court entered an order dismissing this case on December 11, 2013 and the Notice of Appeal was filed on January 8, 2014. This appeal is therefore timely under Fed. R. App. P. 4(a)(1).

## ISSUES PRESENTED

(1)    Whether the District Court errs in dismissing the implied-contract-in-fact/benefit conferred claim by failing to credit liberally strong factual inferences favorable to the Plaintiff to the effect that the Defendant "moved forward" to discuss or negotiate antitrust claims with the News Corporation and therefore owes Plaintiff compensation.

(2)    Whether the District Court errs in dismissing the quasi contract/unjust enrichment claim by failing to credit liberally express factual allegations, and strong factual inferences favorable to the Plaintiff, to the effect that benefit was conferred on the Defendant and therefore Defendant owes Plaintiff compensation.

## STATEMENT OF THE CASE

Defendant Kraft Foods Group, Inc. ("Kraft") violated an implied in fact/benefit conferred contract by committing to compensate Plaintiff Berry Law PLLC ("Berry Law") when it "moved forward" to seek very substantial antitrust recompense from News Corporation, News America Marketing FSI LLC and News America Marketing In-Store LLC (collectively "News"). [First Amended Complaint ¶27 (Dkt. No. 4) ("FAC"); Deferred Appendix Tab 3)]. Under Kraft's express direction Berry Law provided extensive evaluation materials over five months to allow Kraft's General Counsel to meet his commitment to discuss Kraft's claims with News before possibly taking action. [FAC ¶¶6-7, 10-11]. In the alternative, Kraft has been unjustly enriched by refusing to compensate Berry Law under quasi-contract/unjust enrichment doctrine for valuable and beneficial antitrust advice conferred. [*Id.* ¶28].

In mid-August 2010 Berry Law brought to Kraft's attention News' quite significant antitrust exposure to Kraft for monopoly overcharging in the relevant markets for the sale of in-store promotion services and free-standing-insert coupons placed in newspapers (in which Kraft is one of News' biggest customers). [*Id.* ¶3]. Kraft's Chief Litigation Counsel requested extensive analysis and Berry Law provided legal advice evaluating claims over five months. [*Id.* ¶¶5-7]. Berry Law (a) prepared multiple drafts of a forty-two (42) page evaluation memorandum for Kraft

analyzing liability and damage issues, the large recoveries in the prior competitor actions, etc.; (b) compiled a PowerPoint presentation summarizing primary evaluation issues; (c) met in Chicago with Kraft's Chief Litigation Counsel and other counsel to discuss claims; (d) interviewed (with Kraft's Chief Litigation Counsel) multiple employees of Kraft after analyzing its News contracts and other communications with News; (e) provided general tactical and strategic advice; (f) coordinated among Kraft and other consumer packaged goods companies as to possible joint litigation and cost-sharing; and (g) provided memoranda analyzing Kraft's claims in the relevant market for the sale of FSI coupons alone (after a request by Kraft's staff antitrust counsel), as well as a memoranda analyzing contractual waiver issues. [*Id.* ¶6].

An extensive evaluation memorandum was prepared for submission to the top management of Kraft, including its General Counsel, for possible action. [*Id.* ¶7]. Early in this evaluation period, and after a meeting in Chicago with Kraft's Chief Litigation Counsel on October 28, 2010, Berry Law sent a retention email to that counsel. [*Id.* ¶ 13]. He responded "you have asked about fees for work to create the proposal to share with management. FWIW [for what it's worth], we have never paid for that work as far as I know for any outside counsel. We've viewed it as part of what we expect counsel to do in bringing to us a proposal to use their firm. I don't think this will be a big issue for you in view of the size of the ultimate payout should

-3-

this matter proceed favorably, but if it helps you to get comfortable proceeding as I suggest, *I can tell you that presuming we move forward, you will be our counsel on this matter. That requires no further approvals.*" *Id.* (emphasis in the original). Berry Law then asked that it be able to carry its evaluation time and bill it later if the matter "moved forward." [*Id.* ¶14].

At the time of the completion of the Berry Law evaluation memorandum (with Kraft's muliple adjustments ), Kraft Chief Litigation Counsel on November 10, 2010 noted that this matter was "moving pretty fast" and *that he wished to brief his General Counsel to enable him to have discussions about the claim with News.* [*Id.* ¶10 (emphasis supplied)]. As noted, Kraft's Chief Litigation Counsel had told the Firm that the General Counsel intended to honor *a commitment he had made to News "to discuss or negotiate" Kraft's claims with News before Kraft commenced any litigation.* [*Id.* ¶11 (emphasis supplied)].

Express allegations, as well as "liberal" and reasonable inferences from these allegations favorable to the Plaintiff, strongly suggest that Kraft used the Berry Law analysis to "move forward" at the very least to discuss or negotiate claims with News in the context of Kraft's extensive and continuing business relationship with News such that under its own terms Kraft owed Berry Law compensation. [ *Id.* ¶¶7, 10-13]. Kraft benefitted from the in-depth and careful evaluation of its potentially very large

-4-

claim against News, whether or not it ever received in-kind or cash compensation from News as a result of a News contact. [*Id.* ¶¶4-7, 10-11, 20 (potential claim of tens of millions dollars)]. Kraft expressly agreed to compensate the Firm when it moved forward, whether or not it successfully litigated or settled. [*Id.* ¶13].

Also, as further evidence of a News contact triggering compensation, Berry Law alleges "after discussion or negotiation" that it is likely Kraft terminated Berry Law at News' request and as a condition of further discussion of Kraft claims. [*See id.* ¶ 12]. News has conveyed to at least one other large customer it would not discuss settlement if it was represented by Berry Law because it feared that any terms given to one Firm client would be learned by the Firm's other clients [*see id.* ¶12] (and presumably set a settlement benchmark for smaller claimants). At the time of Berry Law's termination by Kraft it was extensively consulting with several other large claimants as to the same antitrust claims which ultimately led to seven consumer packaged goods companies using the Firm to seek relief in the Southern District of New York (via transfer from the Eastern District of Michigan). [*Id.* ¶9]; *infra* at 13 n.3.

Berry Law is entitled to the reasonable value of its services rendered to Kraft under the doctrines of implied contract in fact/benefit conferred and quasi-contract/unjust enrichment. [FAC ¶¶27-28]. A reasonable value of its time expended

is $187,593.75, billed at the usual and customary rates for the senior counsel and paralegal assistance provided within the antitrust specialty. [*Id.* ¶24 & Ex. A ¶5]. Berry Law also incurred expenses in connection with representation of Kraft of $3,934.95. [*Id.* ¶25 & Ex. A ¶6].

## SUMMARY OF ARGUMENT

Dismissals for failure to state a claim are viewed with disfavor and rarely granted. The District Court must accept as true all of the factual allegations contained in the complaint and liberally draw every reasonable inference in the plaintiff's favor. It is sufficient that the pleadings be factually plausible to defeat a motion to dismiss.

As to the implied-contract claim, it is respectfully submitted that Judge Walton turns proper pleading construction on its head by liberally drawing pleading inferences in a light most unfavorable to Berry Law and its ability to resolve the claim on the merits. Kraft committed to compensate the Firm if it "moved forward" to discuss or negotiate its antitrust claims with News. That it has done so is plausibly alleged, first, because Kraft's General Counsel had committed to do so before Kraft took any action.

Second, it is implausible to infer that Kraft timidly walked away from a claim of tens of millions of dollars without any News contact. (This News exposure to Kraft is strongly suggested by the results of five competitor cases which have extracted

nearly $650 million in remedy from News under largely the same monopolization claims.) Kraft's Chief Litigation Counsel expended extensive corporate resources building the case for the claim and expressly directed Berry Law to develop extensive work product over several months in support. It is implausible to conclude that Kraft takes no action to realize value from all this effort, or that finds its claim valueless (particularly in light of the results of the closely-related competitor cases).

Third, it cannot be plausibly inferred that Kraft is too timid to devote time to a phone discussion with News as to its large claim given that it has recently pursued four antitrust actions against other vendors. Yet it would have the Court infer that it is silently walking away from a fifth, very substantial claim without even a call.

Fourth, it is plausibly alleged that the circumstances surrounding Berry Law's termination by Kraft suggest that Kraft took this action at News' request after a preliminary contact. In sum, Plaintiff presents much more than naked assertion (devoid of factual enhancement) that Kraft "moved forward" and owes compensation.

The District Court also errs by dismissing the claim for quasi contract/unjust enrichment. It finds no benefit conferred on Kraft by the Firm's work product because -- as with the implied contract claim -- it concludes that the Firm does not plausibly plead that Kraft negotiated its antitrust claim; and, therefore, the Firm cannot show that any benefit was conferred on Kraft from the use of the Firm's work product.

-7-

Thus, if it is plausibly pled that Kraft has moved forward to a News contact, the second claim should be resurrected as well.

Further, whether or not Kraft negotiated with News, Berry Law has pervasively and expressly alleged that extensive and valuable benefit has been conferred on Kraft by virtue of the Firm's provision of work product worth nearly two hundred thousand dollars. The Court ignores this benefit conferred (even if Kraft fails to to discuss its large claim with News). At the very least, the Firm's elaborate work product gives Kraft a substantial basis to evaluate, and walk away from, its claim. Kraft uses the work product to economize on its expenditure of resources on litigation (perhaps allowing it to pursue its other recent vendor claims).

## **ARGUMENT**

**Standard of Review**. This Court reviews *de novo a* dismissal of a complaint. *See Nat'l Air Traffic Controllers Ass'n, AFL–CIO v. Fed. Serv. Impasses Panel,* 606 F.3d 780, 786 (D.C. Cir. 2010). It "construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Thomas v. Principi,* 394 F.3d 970, 972 (D.C. Cir. 2005). *See also Talenti v. Clinton,* 102 F.3d 573, 574–75 (D.C. Cir. 1996) ("we accept as true all material allegations of the complaint").

**I.     The District Court Manifestly Errs by Ignoring Clear Allegations and Failing to "Draw Every Reasonable Inference" Liberally in Plaintiff's Favor**

    **A.     The Claim of Implied-Contract-In-Fact/Benefit Conferred**

In order to demonstrate the existence of an implied-in-fact contract for services

it must be shown that

> 'First, the party seeking payment must show that the services were carried out under such circumstances as to give the recipient reason to understand the services were rendered for the recipient and not for some other person. Second, the party must demonstrate the existence of such circumstances as to put the recipient on notice that the services were not rendered gratuitously. Finally, the party must prove that the services were beneficial to the recipient.'

*Fred Esra Co. v. Pedas*, 682 A.2d 173, 176 (D.C. Ct. App. 1996) (citation omitted).

> Judge Walton

> agrees that while the amended complaint's well-pleaded factual allegations establish that Berry Law provided legal services to Kraft, they fail to demonstrate the existence of a contract implied-in-fact between the parties. As recounted in the amended complaint, when Berry inquired about a representation agreement, Cherry [Kraft Chief Litigation Counsel] informed him that Kraft had never previously compensated counsel 'for work to create the proposal to share with management,' but *"presuming [Kraft] move[s] forward, [Berry Law] will be [its] counsel on this matter..."*

[Opinion and Order at 5-6 (emphasis supplied) ( Deferred Appendix Tab 2) quoting

FAC ¶13].

However, the District Court concedes that Berry Law "*alleges... that* '[o]n

-9-

information and belief, in January or February of 2012, *Kraft 'moved forward'* with pre-Complaint discussion or negotiation with News." [Opinion and Order at 6-7]. Nonetheless, it then dismisses the implied contract claim by "assuming arguendo that the parties understood use of the phrase 'move forward' to encompass any action taken against News on Kraft's potential claim, *the amended complaint contains no factual basis for the assertion that Kraft and News engaged in negotiations regarding Kraft's potential claim.*" [*Id.* at 6-7]. In the Court's eyes the allegations "present no more than 'a sheer possibility that a defendant has acted unlawfully,' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted), and fail to raise a reasonable inference that Kraft did, in fact, 'move forward' on the claim by meeting with News" and therefore the claim was only "speculative" and implausible. [*Id.* at 7].

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint" and draw every reasonable inference in the plaintiff's favor...." *Iqbal,* 556 U.S. at 662.

"The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." Wright & Miller, *Federal Practice & Procedure 3d* §1357, at 598. A District Court must "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Principi,* 394 F.3d at 972. *See also Talenti,* 102 F.3d at 574–75 ("we accept as true all material allegations

-10-

of the complaint"). "So long as the pleadings suggest a 'plausible' scenario to 'sho[w] that the pleader is entitled to relief,' a court may not dismiss." *Tooley v. Napolitano,* 556 F.3d 836, 839 (D.C. Cir. 2009) quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556-57 (2007). A motion to dismiss may not be granted "even if it strikes a savvy judge that actual proof [the] facts is improbable, and that a recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556 (internal quotation marks and citation omitted) (emphasis supplied).

Here the District Court construes the express factual allegations -- and inferences therefrom -- illiberally and in a light most favorable to the Defendant, not the Plaintiff. It ignores strong, plausible and reasonable inferences from the facts alleged that Kraft "moved forward" to discuss claims with News and, under Kraft's own terms, owes compensation. First, as expressly alleged, Kraft's Chief Litigation Counsel admitted that the Firm's work product was being shared with Kraft's General Counsel and that the latter "intended to honor a commitment he had made to News to discuss or negotiate Kraft's claims with News before Kraft commenced any litigation." [FAC ¶11]. Further, at the time of the completion of the Firm's extensive evaluation memorandum, the litigation counsel on November 10, 2010 noted that matters were "moving pretty fast" and that he wished to brief his General Counsel *"to enable him to have discussions about the claim with News."* [*Id.* ¶10 (emphasis

-11-

supplied)].  These matters were going somewhere, inferentially toward a News discussion.  It is not appropriate -- and an unfavorable construction of the claims -- to infer they were moving pretty fast merely to the General Counsel's trash can.

Second, Kraft was extensively briefed that -- as alleged as factual matter -- it had a potential claim of tens of millions of dollars based on results of essentially the same antitrust claims in five separate and prior competitor actions against News, actions which netted the plaintiffs nearly $650 million in remedy. [*Id.* ¶4]. This included a $300 million judgment on a jury verdict for one competitor alone.[1] Against this history of large potential News' exposure to Kraft, Kraft's Chief Litigation Counsel expended much effort over several months to evaluate and support his client's overcharge claim with the help of Berry Law. He reviewed on multiple

---

[1] Since 1998 News has been sued five times by competitors for restraint of trade, monopolization and/or unfair competition. Two of them (in state and federal courts) were brought by Valassis Communications, Inc. and resulted in a state court jury verdict of $300 million and a subsequent, disclosed federal settlement of $200 million. *Valassis Communications, Inc. v. News America Marketing, Inc.*, No. 06-10240 (E.D. Mich.,filed Jan. 18, 2006); *Valassis Communications, Inc. v. News America Marketing, Inc.,* No. 07-706645-CZ (Mich. Cir. Ct. Wayne Cty, filed March 9, 2007). *See also Theme Productions, Inc. v. News America Marketing FSI*, 546 F.3d 991 (9th Cir. 2008) (affirming $3.5 million antitrust jury verdict); *Insignia Systems, Inc. v. News America Marketing In-Store, Inc.*, 661 F. Supp. 2d 1039 (D. Minn. 2009) (denial of News' summary judgment motion) (shortly thereafter News entered into a $125 million disclosed settlement); *Floorgraphics, Inc. v. News America Marketing In-store Services, Inc.*, No. 04-3500 (D.N.J., filed July 19, 2004) ($29.5 million disclosed settlement after commencement of trial).

occasions and edited Berry Law's forty-two (42) page, single-spaced evaluation memorandum; reviewed a PowerPoint presentation summarizing primary evaluation issues; met in Chicago twice with Berry Law and separately with several counsel of other consumer packaged goods companies to discuss moving to litigation (which transpired in late 2012); facilitated and participated in interviews with multiple Kraft officers and employees after analyzing its News contracts and other communications with News; and reviewed memoranda analyzing separately Kraft's claims in the relevant market for the sale of FSI coupons (after a request by Kraft's staff antitrust counsel) and contract issues. [*See* FAC ¶ 6].

Notwithstanding express allegations and reasonable inferences plausibly suggesting a News contact, Kraft would have this Court believe it is reasonable to infer that Kraft failed to pick up the phone and discuss accommodations with News (when it had already committed to News to do so). Inferences of this Kraft passivity and willingness to walk timidly away from a claim of tens of millions of dollars are particularly implausible given the four recent Kraft antitrust, overcharge claims against other vendors in the federal courts. *Kraft Foods Global, Inc., et al. v. United Egg Producers, Inc. et al.*, Civ. No. 2:12-cv-00088-GP (E.D. Pa., transferred Jan. 9, 2012); *Kraft Foods Group Inc., et al. v. Sea Star Line LLC, et al.*, Civ. No. 2:12-cv-01018-CWH (D.S.C., filed April 13, 2012); *In Re: Vitamins Antitrust, et al. v. Lead*

-13-

*Defendants, et al.*, Civ. No. 1:99-mc-00197-TFH  (D.D.C., filed May 27, 1999);

*Proctor & Gamble Mfg, et al. v. Archer Daniels Mid. et al.*, Civ. No. 3:97-cv-02155-FMS (N.D. Ca., filed June 9, 1997).[2]  Without question Kraft is an aggressive enforcer of the antitrust laws when its financial interests are substantially impacted.

Indeed seven other consumer packaged goods companies sued News on the same antitrust claims (using in part evaluation by Berry Law) the year Kraft terminated Berry Law for providing supposedly meritless claims not worthy of a phone call to News. [FAC ¶8].[3]

Third, a News contact becomes even more plausible given the allegation that Berry Law's termination was triggered by a News demand and after such a contact. [*Id.*¶12]. Upon information and belief, News told Kraft that it would not negotiate with a large customer represented by Berry Law because of its fear that the terms

---

[2] Courts may take judicial notice of these public dockets of the federal courts "whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2). This Court has discretion to judicially notice a fact for the first time on appeal. *See United States v. Dancy,* 510 F. 2d 779, 787 n.43 (D.C. Cir. 1975) ("our authority to notice the records of other litigation"). *See also United States v. Fergueson*, 681 F.3d 826, 834 (6th Cir. 2012); Wright & Graham, *Federal Practice and Procedure 2d* §5110.1, at 301 (power to take original judicial notice on appeal).

[3] The Dial Corporation, H. J. Heinz Company, Foster Poultry Farms, Smithfield Foods, Inc., Farmland Foods, Inc., HP Hood LLC, Bob Evans Farms, LLC, and Spectrum Brands Holdings, Inc. have brought claims in *Dial Corporation et al. v. News Corporation et. al*, Case No. 13 Civ. 06802 (WHP) (S.D.N.Y, filed Dec. 21, 2012) (Pauley, J.)

-14-

might be learned by Berry Law's other clients (and potential claimants). [*Id.*].
Presumably the terms of a large claimant would set a settlement benchmark for these
smaller claimants and not allow News to "buy off" (or price discriminate in favor of)
larger claimants with terms considerably more favorable than it was willing to offer
smaller claimants. News has expressed this fear to another large company consulting
with Berry Law. [*Id.*].

Respectfully, by ignoring strong, reasonable, and plausible inferences that
Kraft moved ahead with News, Judge Walton turns proper pleading construction on
its head by liberally drawing inferences from the complaint in a light most
*unfavorable* to the Plaintiff and its ability to resolve its claims on the merits.
Expressly and inferentially alleged is an implied contract claim that goes well beyond
the "mere possibility" that there was contact between Kraft and News. Presented here
is a claim considerably above the "speculative level." *Twombly*, 550 U.S. at 555.
Even if a "savvy" district court finds "recovery is very remote and unlikely" it may
not dismiss. *Id.* at 556. This is not a circumstance of "naked assertion devoid of
further factual enhancement." *Iqbal,* 556 U.S. at, 678 (internal quotations omitted).

The claim of implied contact is not factually-amplified now simply because
Plaintiff has not had the benefit of the discovery of facts within the control of Kraft
and News alone, both of which are adverse to either Berry Law (here) or to its current

-15-

litigating clients (in the Southern District of New York). In effect, the District Court is setting forth an impossible pleading standard strongly favoring defendants. It requires a plaintiff to allege chapter and verse as to an event it cannot ascertain while ignoring express allegations and strong, plausible inferences pointing to its occurrence (as well as suggesting that discovery is in order). A District Court should not, and cannot under this Circuit's and the Supreme Court's standards, require pleading of an ultimate fact when the information at the pleading stage is not available. It can only require reasonable inferences that the fact in question occurred. Indeed, once again, a motion to dismiss may not be granted "even if it strikes a savvy judge that actual proof [the] facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks and citation omitted) (emphasis supplied).

## B.     The Claim of Quasi Contract/Unjust Enrichment

The District Court compounds its error by dismissing as well the second claim for quasi contract/unjust enrichment.[4] "While the amended complaint alleges that

---

[4] "A quasi-contract . . . is not a contract at all, but a duty thrust under certain conditions upon a party to requite another to avoid the former's unjust enrichment." *Bloomgarden v. Coyer*, 479 F.2d 201, 208 (D.C. Cir. 1973). In order to obtain restitution for unjust enrichment, a plaintiff must prove not only that he has conferred some benefit or advantage on the receiver, but also that it would be unjust not to require reimbursement. *See id.* at 211. "Unjust enrichment occurs when (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retained the benefit;

Berry Law provided legal services to Kraft, [FAC ¶¶ 5-6], *it does not establish that Kraft actually realized a benefit from Berry Law's work,* as required to recover compensation under the contract implied-in-law theory." [Opinion and Order at 8-9 (emphasis supplied)]. It dismisses because, if Plaintiff cannot allege "negotiations," it cannot allege Kraft benefit or unjust enrichment. [*Id.*] Thus, if the Court's construction of the implied contract allegations is in error (as to whether Kraft moved forward to contact Kraft) so is its dismissal of the second claim.

Further, whether or not Kraft contacted News, Berry Law has pervasively alleged that benefit has been conferred on Kraft to the tune of nearly two hundred thousand dollars worth of work product. FAC ¶¶6-7,10-11,20-21,24-26.  This is ignored by the Court. While the benefit realized by Kraft possibly could be greater if (a) Kraft negotiated with News and/or (b) negotiated and received compensation, neither eventuality need be alleged to make a claim that Kraft benefitted from the

---

and (3) under the circumstances, the defendant's retention of the benefit is unjust." *McWilliams Ballard, Inc. v. Level 2 Dev.,* 697 F. Supp. 2d 101, 106 (D.D.C. 2010) (internal citations omitted). For Berry Law to recover here it must be alleged that Kraft was unjustly enriched at Berry Law's expense and that the circumstances are such that in good conscience Kraft should make restitution. *See also Vereen v. Clayborne,* 623 A.2d 1190, 1194 (D.C. Ct. App.1993).

work product provided. [*Id.* ¶6]. At the very least it gave Kraft a substantial basis to decide to walk away, remain passive, and never breathe a word of its claim (worth potentially tens of millions of dollars) to News (despite is aggressive litigation history in multiple recent cases). In this benefit scenario Kraft used the work product to economize on its litigation resources perhaps so it could pursue other antitrust claims against other vendors.

It cannot reasonably be said that a plausible (indeed probable) unjust enrichment claim has not been alleged based on the substantial benefit conferred on Kraft over five months. Once again, "[s]o long as the pleadings suggest a 'plausible' scenario to 'sho[w] that the pleader is entitled to relief,' a court may not dismiss." *Tooley*, 556 F.3d at 839. Berry Law has expressly alleged facts, and its entitled to plausible inferences from those facts, showing that "it is fair and just" for Kraft to recompense for benefit retained. *4934, Inc. v. District of Columbia Dept. of Employment Services,* 605 A.2d 50, 56 (D. C. Cir. 1992). It "render[ed] valuable services that [Kraft] knowingly and voluntarily accept[ed]." *Brown v. Brown,* 524 A.2d 1184, 1186 (D.C. Cir. 1987). Kraft has been unjustly enriched at Berry Law's expense, and in circumstances that in good conscience Kraft should make restitution. *Bloomgarden,* 479 F.2d at 211.

-18-

## CONCLUSION

For the above reasons Appellant requests that the judgment be vacated and this Court order further proceedings consistent with its Opinion and Order including allowing the discovery necessary to resolve the claims on the merits.

Dated: May 27, 2014                    Respectfully submitted,

By: /s/_____

BERRY LAW PLLC
R. Stephen Berry
D.C. Bar No. 234815
1717 Pennsylvania Ave. NW
Suite 450
Washington, D.C. 20006
Telephone: (202) 296-3020
Telecopy: (202) 296-3038
Email: sberry@berrylawpllc.com

*Counsel for Plaintiffs-Appellants*

-19-

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,014 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect 12 in 14 point Times New Roman.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on May 27, 2014.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ _____
R. Stephen Berry

-21-