NO. 14-7001

# In the
# United States Court of Appeals
## for the District of Columbia

**BERRY LAW PLLC,**

*Plaintiff-Appellant,*

v.

**KRAFT FOODS GROUP, INC.,**

*Defendant-Appellee.*

On Appeal from the United States District Court for the District of Columbia
Civil Action No. 13-cv-00475

### BRIEF OF APPELLEE KRAFT FOODS GROUP, INC.

Daniel S. Blynn
Kelley Drye & Warren LLP
3050 K Street, N.W., Suite 400
Washington, D.C. 20007
(202) 342-8400

Of Counsel:
Darrell J. Graham
John E. Bucheit
Roeser Bucheit & Graham LLC
2 N. Riverside Plaza, Suite 1420
Chicago, IL 60606
(312) 621-0301

*Counsel for Appellee Kraft Foods Group, Inc.*

## <u>CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES</u>

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for Appellee Kraft Foods Group, Inc. certifies as follows:

### A.     Parties, Intervenors, and Amici Curiae

The Appellant is Berry Law Firm PLLC. The Appellee is Kraft Foods Group, Inc. There were no intervenors or amici appearing before the District Court, nor are there any appearing before this Court.

### B.     Rulings under Review

The ruling under review is the December 11, 2013 Order of the District Court for the District of Columbia (Walton, J.) in Civil Action No. 13-0475, granting, without prejudice, Appellee's motion to dismiss Appellant's complaint. The Order appears at Tab 2 of the Deferred Appendix.

### C.     Related Cases

Undersigned counsel are not aware of any related cases pending in this Court or any other court.

# **TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ...............

TABLE OF CONTENTS ...................................................................... i

TABLE OF AUTHORITIES ............................................................... ii

ISSUES PRESENTED FOR REVIEW ................................................ 1

STATEMENT OF THE CASE ............................................................ 1

    A.  The Alleged Facts. ................................................................ 1

    B.  The District Court's Dismissal ............................................. 5

SUMMARY OF THE ARGUMENT ................................................... 7

ARGUMENT ....................................................................................... 10

  I.  Standard of Review ................................................................ 10

  II.  Berry's Complaint Fails to Allege the Existence of an Implied-in-Fact Contract. ............................................................................... 11

    A.  An Implied Contract for Payment Cannot be Reasonably Inferred from the Facts and Circumstances Alleged. .......................................... 11

    B.  Berry's Claim that He Is Entitled to Compensation because Kraft "Moved Forward" Is Contrary to the Parties' Express Agreement. ....................... 15

    C.  The Complaint in all Events Fails to Allege a Plausible Claim that Kraft "Moved Forward" with its Claims, Even Assuming the Agreement Berry Alleges. ................................................................. 18

  III.  Plaintiff's Quasi-Contract Claim also Fails as a Matter of Law .................. 21

  IV.  Kraft Respectfully Requests that the Court Remand with Instructions that the District Court Dismiss the Complaint with Prejudice. ................................. 26

CONCLUSION ................................................................................... 27

REQUEST FOR ORAL ARGUMENT ............................................... 28

CERTIFICATE OF COMPLIANCE ................................................... 28

i

<u>**TABLE OF AUTHORITIES**</u>

**Cases-Federal**

*Altherton v. Dist. of Columbia Office of the Mayor*, 567 F.3d 672 (D.C. Cir. 2009). .................................................................................................................. 10

*\*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...................................... 8, 9, 10, 19, 25

*Aulson v. Blanchard*, 83 F.3d 1 (1st Cir. 1996) .................................................. 20

*\*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ......... 8, 9, 10, 11, 19, 20, 26

*Bethel v. McAllister Bros., Inc.*, 81 F.3d 376 (3d Cir.1996).................................. 27

*\*Bloomgarden v. Coyer*, 479 F.2d 201 (D.C. Cir. 1973) ..7, 8, 12, 13, 14, 15, 22, 23

*C. Robert Suess v. FDIC*, 770 F. Supp. 2d 32 (D.D.C., 2011) .........................22, 23

*Jones v. Horne*, 634 F.3d 588 (D.C. Cir. 2011) ................................................... 10

*Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004) ............................................... 17

*King & King, Chartered v. Harbert Int'l., Inc.*, 503 F.3d 153 (D.C. Cir. 2007)........ ...............................................................................................................15, 21

*King v. Jackson*, 487 F.3d 970 (D.C. Cir. 2007)................................................... 10

*Lirtman v. Fuqua Indus., Inc.*, 677 F.2d 548 (7th Cir. 1982)............................... 24

*Maib v. FDIC*, F. Supp. 2d 14 (D. D.C. 2011) ..................................................... 17

*Maple Island Farm v. Bitterling*, 209 F.2d 867 (8th Cir. 1954)........................... 23

*Marshall v. City of Cape Coral*, 797 F.2d 1555 (11th Cir. 1986) ........................ 20

*Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364 (D.C. Cir. 2007) .................................................................................................... 18

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046 (6th Cir. 2011) ......................................................................................................................... 8

*Paleteria LaMichoacana v. Productos Lacteos*, 905 F.Supp. 2d 189 (D. D.C. 2010) ......................................................................................................................... 9

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043 (D.C. Cir. 2012)........................................................................................ 10

*Tooltrend, Inc. v. CMT Utensil, SRL*, 198 F.3d 802 (11th Cir. 1999) .................. 23

*U.S. v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ..................................................... 17

*Wallingford v. Zenith Radio Corp.*, 310 F.2d 693 (7th Cir. 1962) ....................... 27

\*   Authorities upon which we chiefly rely are marked with asterisks

ii

**Cases-State**

*\*Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58 (D.C. 2005) ................................................................................ 12, 16, 22

*Rutledge v. Housing Authority*, 411 N.E.2d 82 (Ill. Ct. App. 1980) ..................... 24

*Union Light & Power Co. v. D.C. Dep't. of Empl. Servs.,* 796 A.2d 665 (D.C. 2002) ...................................................................................... 12

*Vereen v. Clayborne,* 623 A.2d 1190 (D.C. 1993) ................................................ 11

**Statutes**

28 U.S.C. § 1291 .................................................................................................... 27

**Rules**

Fed. R. Civ. Pro. 8(a) ............................................................................................ 10

**Treatises**

RESTATEMENT (1ST) OF RESTITUTION § 57 (1937) ................................................ 24

## ISSUES PRESENTED FOR REVIEW

(1)    Whether the District Court properly determined that Plaintiff's complaint fails to state a plausible claim that Kraft Foods Group, Inc. ("Kraft") breached an alleged implied-in-fact contract for payment given the complaint's allegations demonstrating that Plaintiff did not have a reasonable expectation of payment, or that Kraft was reasonably notified by the circumstances that Plaintiff expected such payment.

(2)    Whether the District Court properly dismissed Plaintiff's claim for payment under a quasi-contract theory of relief given the complaint's (a) failure to plead facts demonstrating that Kraft realized a benefit from Plaintiff's alleged services, and (b) allegations reflecting that that the work for which Plaintiff seeks payment was for Plaintiff's own benefit.

## STATEMENT OF THE CASE

A. The Alleged Facts.

Stephen R. Berry is an attorney with more than 30 years' experience specializing in antitrust and other complex commercial litigation.  (First Amend. Complaint ("Cmplt"), Ex. A ¶ 2.)  He is the sole principal of the law firm Berry Law PLLC, the named plaintiff to his complaint.[1]

---

[1]    Berry filed his initial complaint in this matter on or about April 10, 2013, which he amended without substantive change on May 13, 2013.  Both complaints named as the plaintiff Berry's firm, Berry Law PLLC.  For ease of reference, we refer to both Berry and his firm throughout the brief collectively as "Berry."

In August 2010, Berry approached Kraft's Chief Litigation Counsel about the possibility of pursuing on Kraft's behalf potential antitrust claims Berry thought the company may have against an advertising company, News America Marketing ("News"), relating to certain in-store promotion and free standing insert coupon services News provided Kraft.  (Cmplt. ¶ 3; DA __.)

In response, Kraft asked Berry to provide it an assessment of News' potential liability to Kraft and potential damages.  (Cmplt. ¶¶ 5-7; DA ___.)  The parties met on October 28, 2010, after which Berry alleges that he sent Kraft a "retention email" seeking to memorialize an agreement for services.  (Cmplt. ¶ 13; DA ___.)  Neither the complaint nor Berry's attached affidavit describes the contents of the email or the proposed terms of Berry's engagement.  (*Id.*)  Nor does the complaint allege that Kraft accepted the purported "retention email" or any of its proposed terms.  (*Id.*)

In response to the email, Kraft's Chief Litigation Counsel, Douglas Cherry, told Berry that Kraft would not compensate him for time he spent preparing his proposal and initial evaluation of the potential claims.  (Cmplt. ¶ 13; DA ___.)  Cherry responded:

> "You have asked about fees for work to create the proposal to share with management.  [For what it's worth], we have never paid for that work as far as I know for any outside counsel.  We've viewed it as part of what we expect counsel to do in bringing to us a proposal to use their firm.  I don't think this will be a big issue for you in view of the size of the ultimate payout should this matter proceed favorably, but if it helps you to get

2

comfortable proceeding as I suggest, I can tell you that presuming we move forward, you will be our counsel on this matter. That requires no further approvals."

(*Id.*)

Berry omits from the complaint the parties' email exchange that immediately followed:

Berry replied to the above email from Mr. Cherry: "this makes sense." (Mot. to Dismiss, Exh. 1, at 2; DA ___.) Berry then proposed two options. The first, which the complaint alleges, was to ask Cherry if he would nevertheless "carry [the] time" forward and "bill it at reduced rates as time necessary to draft the claim if and when Kraft proceeds and the retention email accepted?" (Cmplt. ¶ 14; DA ___.) The second, which the complaint omits, was to ask: "Or would you prefer we only bill time from the date retention is formally accepted, that is, after the management proposal?" (Mot. to Dismiss, Exh. 1, at 2; DA. ___.) Berry assured Mr. Cherry that "[e]ither way [was] acceptable," and that Cherry should let him know "so I can adjust the retention email draft" to reflect Kraft's preferred option. (Mot. to Dismiss, Exh. 1, at 2; DA. ___.)

Kraft responded by again telling Berry that it would not compensate him for time spent preparing his proposal and initial evaluation of the claims prior to management-approval of Berry's engagement. To that end, Mr. Cherry again told Berry, Kraft's "practice is to treat everything pre-management approval as having

3

been done for the pitch, and therefore not billable." (Mot. to Dismiss, Exh. 1, at 1; DA. ___.)

Berry agreed, replying that Kraft's "suggested billing arrangement re pitch [is] fine. Onward." (*Id.*)

Over the next few months, Berry put together a preliminary evaluation of Kraft's potential claims for Kraft's consideration, hoping to persuade Kraft to pursue the claims with Berry as its counsel. (Cmplt. ¶¶ 4-6; DA ___.) Berry alleges that he and his firm's paralegal spent 246.5 hours preparing his evaluation of the merits of the claims and News' potential liabilities.

The complaint alleges that Kraft "terminated" Berry's "representation" on February 19, 2012. (Cmplt. ¶ 8; DA. ___.) In fact, as the complaint concedes, Kraft decided not to engage Berry because his analysis had failed to convince Kraft, *inter alia*, that its prospects of recovery were anything better than "uncertain." (*Id.*) Berry nevertheless claims he should be awarded $825 an hour for the time he spent marketing the prospective claims to Kraft, as well as $100 an hour for his paralegal's time. (Cmplt., Ex. A ¶ 4; DA ___.) All told, Berry alleges that his firm is owed $187,593.75 in fees and $3,934.95 in costs. (*Id.* ¶¶ 5-6; DA ___.)

As the basis for his claim, Berry asserts both an implied-in-fact and quasi-contract theory of relief. (Cmplt. ¶¶ 27-28; DA. ___.) The gravamen of Berry's

4

implied-in-fact contract claim are his allegations that: (i) he and Kraft reached an

implied agreement that Kraft would pay for time spent preparing his proposal if it

"moved forward" with the potential claims against News; and (ii) Kraft, in fact,

"moved forward" with the claims by negotiating and/or discussing them with

News. (Cmplt. ¶ 5; DA ___.) Critically, the complaint speculates only that such

negotiations "possibly" occurred and, if they did, that they may have resulted in

"possible" compensation to Kraft based on the alleged facts that (i) Berry was

informed that "Kraft's General Counsel intended to honor a commitment he had

made to News to discuss or negotiate Kraft's claims with News before Kraft

commenced any litigation," and (ii) Berry's speculation that "it is not unlikely that

News indicated to Kraft that it did not wish to discuss terms with Kraft if it

continued to be represented by Berry Law" given that News had "expressed the

fear that any terms given to one consumer packed goods company . . . might be

learned by Berry Law's other clients." (Cmplt. ¶¶ 11-12, 21-22; DA ___).

   B. <u>The District Court's Dismissal.</u>

   The District Court granted Kraft's motion to dismiss and dismissed the

complaint without prejudice on December 11, 2013. (Op. & Or.; DA ___.)

   (1)      <u>The implied-in-fact contract claim.</u> The District Court agreed that the

facts and circumstances alleged fail to demonstrate either that Berry had a

reasonable expectation of payment for the alleged services provided, or that Kraft

was reasonably aware of any such expectation, given Kraft's explicit instruction that such work was non-compensable and instead was "part of what we expect counsel to do in bringing to us a proposal to use their firm."[2]  (Op. & Or. at 6-7; DA___.)  The District Court further rejected Berry's argument that the complaint sufficiently alleges Kraft's breach of an implied agreement for payment if it "moved forward" with the claims because, even assuming such agreement existed, the complaint "contains no factual basis for the assertion that Kraft and News engaged in negotiations regarding Kraft's potential claim," and thus "presents no more than 'a sheer possibility of wrongdoing'" insufficient to support Berry's claim.  (Op. & Or. at 6; DA ___.)

(2)    The implied-in-law contract claim.  For the same reason, the District Court ruled, the complaint fails to establish that Kraft derived a tangible benefit from Berry's alleged work necessary to establish a basis for recovery under quasi-contract.  (Op. & Or. at 8; DA ___.)  To that end, the District Court observed that the complaint concedes that Kraft was unaware of the potential claims against News until Berry brought them to its attention; consequently, Berry's analysis "did

---

[2]        Given the complaint's express allegations to this effect, the District Court considered it unnecessary to consider the parties' email conversation the complaint omits, but which Kraft submitted with its motion to dismiss as integral to Berry's contract claims, and thus incorporated into the complaint by reference (Op. & Or. at 6, n. 3; DA ___.) The District Court observed, nevertheless, that the emails reflected Berry's "express[] assent" to Kraft's "suggested billing arrangement 'to treat everything pre-management approval as having been done for the pitch, and therefore not billable.'"  *Id.*

6

not even save Kraft the time and expense of evaluating the claim itself or improvidently proceeding with an unmeritorious claim." (Op. & Or. at 8-9; DA ___.)[3]

## SUMMARY OF THE ARGUMENT

The Court should affirm dismissal of Berry's complaint for the following reasons:

(1)    As *Bloomgarden* holds, a contract of payment for services may not be implied, either in fact or law, "unless the recipient knows or has reasonable grounds to believe that the beneficial acts were performed in anticipation of remuneration therefore." *Bloomgarden*, 479 F.2d at 209, 212. The facts alleged plainly reflect that Berry did not reasonably expect to be paid for his preliminary work, which he performed for the purpose of persuading Kraft to hire him, nor did Kraft have any reason to believe that he did. Kraft explicitly told Berry in advance that he would not be paid for such work; Berry agreed, and performed it anyway.

(2)    Even assuming (contrary to the complaint's allegations) that Kraft agreed to compensate Berry for his "evaluation work" if Kraft "moved forward"

---

[3]    Having dismissed Berry's quasi-contract claim on this ground, the District Court did not address Kraft's additional argument that, as a matter of law, Berry lacks an actionable basis for recovery in quasi-contract given the well-established rule, articulated by this Court in *Bloomgarden v. Coyer*, 479 F.2d 201 (D.C. Cir. 1973), that no claim will lie "for activities which the plaintiff engaged in for the purpose of securing future business with the defendant and others," which, it is clear under the circumstances alleged, was the motivation for Berry's alleged provision of services here. We address this argument in Arg. § III, below.

7

with its claims by discussing them with News, the District Court was correct to conclude that the complaint fails to allege facts establishing a plausible claim that Kraft either did so, or that it otherwise derived a tangible benefit from the work.

(3)     Berry's quasi-contract claim fails for the same reason. Business development activities of the type Berry alleges are not actionable as a basis for quasi-contract compensation. *Bloomgarden*, 479 F.2d at 211 (no claim may lie under *quantum meruit* for services rendered in order to gain a business advantage). A contrary rule, courts have long recognized, would confer a quasi-contract right to payment on anyone unsuccessfully attempting to sell their services generally and, in the context of the attorney-client relationship specifically, would encourage litigants to pursue meritless claims to avoid the possibility of *quantum meruit* liability to their attorneys if they declined to do so.

(4)     Finally, Berry's assertion that the District Court's dismissal "turns proper pleading construction on its head" (App. Br. 15), is contrary to the pleading standard articulated by *Twombly* and *Iqbal*, as is the argument that the District Court erred by requiring him to plead "ultimate facts" of which he is unaware (*id.* 16). *See*, *e.g.*, *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) ("By foreclosing discovery to obtain pricing information, the combined effect of *Twombly* and *Iqbal* require plaintiff to have greater knowledge now of factual details in order to draft a 'plausible complaint.'") To survive a

8

motion to dismiss, a complaint must do more than speculate a set of possible facts that may or may not be consistent with liability. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (to state a claim complaint must do more than "plead[] facts that are 'merely consistent with' a defendant's liability"). It must do more than hazard guesses the plaintiff hopes to be true. A complaint must instead allege facts sufficient to show a plausible, as opposed to merely possible, claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The reason, *Twombly* makes clear, is to prevent plaintiffs from doing precisely what Berry is attempting to do here – filing nuisance suits solely to obtain a nuisance settlement. *Id.* at 557-58 (requirement that complaint allege more than possibility of liability intended to prevent plaintiffs "with a largely groundless claim[s]" from "tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value"); *Paleteria LaMichoacana v. Productos Lacteos*, 905 F. Supp. 2d 189, 192 (D.D.C. 2010) ("*Twombly* and *Iqbal* were motivated by a concern that baseless complaints could 'open the gates to expensive discovery and force an extortionate settlement.'").

　　　Berry's complaint here alleges no more than speculative assumptions insufficient to state an actionable claim under *Twombly* that, in all events, are directly contrary to what the parties actually understood and agreed. The Court should affirm its dismissal.

## ARGUMENT

## I.   Standard of Review

This Court reviews *de novo* the dismissal of a complaint for failure to state a claim upon which relief can be granted.  *King v. Jackson*, 487 F.3d 970, 972 (D.C. Cir. 2007).

Allegations of a complaint that reflect no more than the "mere possibility of misconduct" are insufficient to state a claim under Fed. R. Civ. Pro. 8(a).  *Iqbal*, 129 S. Ct. at 1950; *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."); *Jones v. Horne*, 634 F.3d 588, 595 (D.C. Cir. 2011).  A complaint must instead allege sufficient facts that, accepted as true, "state a claim to relief that is plausible on its face." *Altherton v. Dist. of Columbia Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (citing *Iqbal*, 129 S. Ct. at 1949); *Jones*, 634 F.3d at 595 (same).  A complaint alleging facts "'that are merely consistent with a defendant's liability' [] stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949-50 (quoting *Twombly*, 550 U.S. at 567-70).  Accordingly, allegations that are "equally well explained" by legitimate conduct do not support a reasonable inference of liability, and thus "'do not suffice . . . to show illegality.'" *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051-52 (D.C. Cir. 2012) (quoting *Twombly*, 550 U.S. at 556-57); *Iqbal*, 129 S. Ct. at 1951

(allegations equally compatible with lawful conduct insufficient to state a plausible claim for relief).[4]

## II.   Berry's Complaint Fails to Allege the Existence of an Implied-in-Fact Contract.

### A. An Implied Contract for Payment Cannot be Reasonably Inferred from the Facts and Circumstances Alleged.

The District Court correctly ruled that Berry's implied-in-fact theory of recovery fails as a matter of law because he cannot establish the necessary elements of an enforceable contract – namely, an implied agreement by Kraft to pay Berry for a preliminary evaluation of the litigation he hoped Kraft would pursue.

An implied-in-fact contract "is a true contract, containing all necessary elements of a binding agreement.  It differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt." *Vereen v. Clayborne,* 623 A.2d 1190, 1193 (D.C. 1993); *Jordan Keys & Jessamy, LLP v.*

---

[4]     For this reason, Berry's argument that the District Court erred by not drawing "every reasonable inference" in his favor is without merit.  (App. Br. 9.) While a district court must draw reasonable inferences in the plaintiff's favor, *Twombly* instructs that it is not required to turn a blind eye to other reasonable inferences that do not support a plaintiff's claim where, as here, the facts alleged are equally consistent with legitimate conduct.  *Twombly* 550 U.S. at 546 (while parallel conduct allegation in antitrust suit "gets the [] complaint close to stating a claim, without further factual enhancement it stops short of the line between possibility and plausibility.").

*St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 62 (D.C. 2005). To establish the existence of a contract implied-in-fact, a plaintiff thus bears the burden of alleging facts and circumstances from which the necessary elements of an express contract (*i.e.*, offer, acceptance, consideration, and agreement on material terms) may be implied. *See*, *e.g.*, *Bloomgarden*, 479 F.2d at 208; *Jordan Keys & Jessamy*, 870 A.2d at 62.

To do so, a plaintiff must show that: (1) valuable services were rendered; (2) for the person sought to be charged; (3) which services were accepted, used, and enjoyed by the person sought to be charged; (4) under circumstances that reasonably notified the defendant that the plaintiff reasonably expected to be paid for it. *Jordan Keys & Jessamy*, 870 A.2d at 62*; Union Light & Power Co. v. D.C. Dep't. of Empl. Servs.,* 796 A.2d 665, 671 (D.C. 2002) (to establish implied-in-fact contract plaintiff must prove that he reasonably expected payment from the defendant).

Even assuming Berry provided Kraft a "valuable service" (as opposed to merely pitching a business opportunity for himself) sufficient to establish the first three elements of his claim, Berry does not allege sufficient facts to support the fourth – either that he reasonably expected payment for the "service" he provided, or that Kraft was reasonably aware of any such expectation.

The Court's leading opinion in *Bloomgarden* is directly on point. In cases

12

where "fees are sought in business-opportunity transactions, [] a contract will *not* be implied *unless* the recipient knows or has reasonable grounds to believe that the beneficial acts were performed in anticipation of remuneration therefor." *Bloomgarden*, 479 F.2d at 209 (emphasis added).  The plaintiff in *Bloomgarden* sued to recover a finder's fee he claimed he was owed for facilitating several meetings between the defendant and potential investors that ultimately lead to a lucrative real estate project.  *Id.* at 205-06.  The plaintiff had provided the service, the evidence established, in the hope of obtaining future business from the defendant and others if the project materialized.  *Id.* at 207-208.  After his *post hoc* demands for a finder's fee were rejected, the plaintiff sued to recover the fee on the basis of either an implied-in-fact or quasi-contract for payment.

Affirming dismissal of the claims on summary judgment, the Court observed that the considerations dispositive of both claims were "identical."  *Id.* at 211.  The plaintiff's claim failed as a matter of law under either theory because, among other things, he could not establish a reasonable expectation of being paid at the time he performed the service, nor did the defendants have reason to believe the plaintiff intended to demand a fee.  *Id.* at 212 ("There simply was no basis on which a jury could rationally find that when [plaintiff] brought the parties' together he entertained any thought of a finder's fee for himself, or that those with whom he dealt held the payment of such a fee in prospect.")  At most, the plaintiff had

13

provided the service in the hope of securing future business from the project if it came to fruition, which the Court held is not an actionable basis for payment under an implied contract where either "the plaintiff did not contemplate a personal fee, *or* the defendant could not reasonably have supposed that he did."  *Id.* at 211-212 (emphasis added) ("Nor is compensation mandated where the services were rendered simply in order to gain a business advantage.").

The facts alleged in this case require the same result.  Although Berry alleges that he approached Kraft with a potential business opportunity and sent Kraft a "retention email," he does not describe the contents of the email, or otherwise state the terms of the proposed "retention" he solicited.  (Cmplt. ¶ 13; DA ___.)  Significantly, Berry does not allege that Kraft accepted the proposal, because, as he admits, Kraft did not.  (Cmplt. ¶¶ 13-15; DA ___.)  Indeed, Kraft made it perfectly clear to Berry that it would *not* pay him for a preliminary assessment.  (Cmplt ¶ 13; DA ___.)  Moreover, Kraft told Berry that he should consider the work to be "part of what [Kraft] expect[s] counsel to do in bringing to [it] a proposal to use their firm."  (*Id.*)

It is implausible to infer from these alleged facts that Berry reasonably expected to be paid for his preliminary evaluation of the claims.  Even more implausible is any inference that Kraft, having told Berry that it would not compensate him for such work, nonetheless reasonably suspected that Berry would

14

later demand payment, as the District Court properly concluded.  (Op. & Or. 6-7;

DA ___.)  Absent such basis for an implied understanding of payment, Berry's

failed hope that Kraft would pursue litigation against News is not, as a matter of

law, an actionable basis for recovery.  *Cf. King & King, Chartered v. Harbert*

*Int'l., Inc.*, 503 F.3d 153, 157 (D.C. Cir. 2007) (*quantum meruit* for legal fees not

allowed when client elects not to pursue case due to reasonable assessment that

there is no chance of recovery; contrary rule would promote bad policy of

encouraging plaintiffs to pursue meritless claims); *Bloomgarden*, 479 F.2d at 212

("[C]hagrin, disappointment, vexation, or supposed ingratitude cannot be used as a

subsequent basis for a claim for compensation where none was originally intended

or expected.").

## B. Berry's Claim that He Is Entitled to Compensation because Kraft "Moved Forward" Is Contrary to the Parties' Express Agreement.

Berry all but ignores the foregoing, claiming instead that Kraft agreed to

compensate him for time spent on his proposal if Kraft "moved forward" with its

claims against News.  The defects with this contention are many.

While Berry argues that the parties intended "move forward" to mean *any*

action taken relative to News regardless of how negligible, the complaint alleges

no facts supporting this interpretation over the more plausible interpretation the

complaint implies – that "move forward" meant accepting Berry's proposal to

15

engage in a dispute with News.  (DA ___.)  Nor does the complaint allege any

facts to suggest that, even if Kraft did "move forward" in some other fashion, it

agreed to compensate Berry for his preliminary evaluation work on an hourly

basis, at the hourly rate Berry seeks.  While Berry may (or may not) have proposed

such terms (the complaint does not allege the contents of the "retention email" he

sent Kraft), it is clear from the complaint that Kraft rejected them.  The complaint

thus fails to allege, as it must, Kraft's acceptance of the payment terms he alleges

as the basis for his implied-in-fact contract claim.  *See*, *e.g.*, *Jordan Keys &*

*Jessamy*, 870 A.2d at 62 (to establish implied contract, plaintiff must allege and

prove all necessary elements of an express contract, including offer and

acceptance).

More to the point, Berry's claim of an implied contract is directly at odds

with Kraft telling Berry that it did not pay outside counsel "for work to create [a]

proposal to share with management," because it is "part of what [Kraft] expect[s]

counsel to do in bringing us a proposal to use their firm."  That much the complaint

expressly alleges which, as the District Court concluded, is alone fatal to Berry's

claim.  (Op. & Or. at 6; DA ___.)

While Berry argued below that the parties' email discussion to this effect

must be ignored because his complaint omits it, it is well established that, on a

motion to dismiss, a court may consider matters outside the pleadings that "are

16

referred to in the complaint and are integral to" the plaintiff's claim. *Kaempe v.*

*Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *see also Maib v. FDIC*, F. Supp. 2d 14,

17 (D.D.C. 2011) (court may consider on motion to dismiss documents

"incorporated by reference in the complaint . . . or documents upon which the

complaint necessarily relies, even if the document is produced not by the plaintiff .

. . but by the defendant in a motion to dismiss") (citations and internal quotations

omitted).  A court may treat such documents as part of the complaint, and "thus

may assume that its contents are true for purposes of a motion to dismiss under

Rule 12(b)(6)."  *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (cited with favor

by *Kaempe*, 367 F.3d at 965).  Moreover, to the extent a complaint's express

allegations are contradicted by the contents of a document it incorporates, such

allegations need not be accepted as true.  *Kaempe*, 367 F.3d at 963.

  There is no dispute that the parties' November 10-11, 2010 email

conversation is integral to Berry's complaint, given that he selectively quotes from

the emails as the alleged basis for his claim, while ignoring those portions of the

parties' discussion that refute it.  (Compl. ¶¶ 13-14; DA ___.)  The complaint thus

plainly incorporates the entirety of the parties' conversation by reference, and the

District Court could have properly considered it even though not expressly alleged

17

in the complaint.[5]  While the District Court found it unnecessary to do so given

Berry's express allegations, the entirety of the parties' discussions make

abundantly clear that their understanding was the exact opposite of what Berry

alleges.  *See*, *e.g.*, *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d

364, 367 (D.C. Cir. 2007) (appellate court may affirm judgment "on a ground not

relied on by the lower court, provided that the opposing party has had a fair

opportunity" to address it).

C.   The Complaint in all Events Fails to Allege a Plausible Claim that Kraft "Moved Forward" with its Claims, Even Assuming the Agreement Berry Alleges.

The principal focus of Berry's appeal – *i.e.*, whether his complaint plausibly

alleges that Kraft "moved forward" with its claims against News – is wholly beside

the point.  Even if Kraft did "move forward," as Berry asserts, his claim still fails

as a matter of law given that it is contrary to the parties' express understanding that

none of his "evaluation time" would be compensable under any circumstance.

Berry's continued speculation on appeal – the gist of which is that Kraft could not

have reasonably resisted his proposal or the opportunity to hire him as its counsel –

is thus irrelevant.

---

[5]      The authenticity of the emails Kraft attached to its motion is undisputed. Although Berry urged the District Court to either exclude the emails or convert Kraft's motion to a summary judgment proceeding, he did not challenge their authenticity or otherwise dispute that they accurately reflect the parties' discussions.

Nevertheless, the District Court properly determined that the complaint fails to plausibly allege facts showing that Kraft in fact used Berry's alleged work product to "move forward" against News.  The most Berry is able to muster in support of his claim is that Kraft "possibly" had negotiations with News, which may have resulted in "possible" compensation to Kraft, and that "it is not unlikely" that Kraft obtained leverage over News as a result of its association with Berry. (Complt. ¶ 12; DA ___.)  Double negatives aside, this is exactly the type of speculative possibility that *Twombly* and *Iqbal* hold inadequate to state a claim.

At bottom, none of Berry's continued speculation on appeal is sufficient to preclude the equally if not more likely inference he ignores – that Kraft did not "move forward" with the claims because Berry's analysis failed to convince Kraft, *inter alia*, that the claims had merit or its prospects of recovery were anything better than "uncertain."  (Cmplt. ¶ 8; DA ___.)  While Berry cites to other cases different companies have brought against News, his complaint fails to allege *any* facts to show that Kraft's prospective claims were anything like those claims or which permit any inference, let alone a reasonable one, that Kraft could have prevailed on them.  (App. Br. 12.)  Indeed, Berry's claim that "[w]ithout question Kraft is an aggressive enforcer of the antitrust laws when its financial interests are substantially impacted" (*id.* 14) suggests the opposite of what he claims.  If Berry's proposal had any merit, Kraft would undoubtedly have pursued it.  And while

19

Berry presumes that his "termination" "was triggered by a News demand" (*id.*), and that such presumption supports an inference that Kraft benefited from his involvement, the complaint states no actual facts to support this, or which required the District Court to credit it over the more plausible inference that Kraft rejected Berry's proposal because it lacked merit.  *See Twombly*, 550 U.S. at 555-57 (allegation of parallel conduct alone, while consistent with anti-trust liability, are without more insufficient to plead a claim).

While courts must draw *reasonable* inferences the alleged facts support, they are not required to credit conclusions drawn from inference that is premised on speculation.  *See*, *e.g.*, *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (the fact court should construe reasonable inferences in plaintiff's favor "does not force an appellate court to swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited."); *Marshall v. City of Cape Coral*, 797 F.2d 1555, 1559 (11th Cir. 1986) (although "[a]ll reasonable inferences arising from the evidence must be resolved in favor of the non-movant . . . inferences based on speculation are not reasonable.").  Ultimately, this is all Berry has.

Indeed, under Berry's theory, Kraft was locked in to compensating Berry from the start, because once Berry shared his theories, anything Kraft "may" have done, or "possibly" did or did not do, cannot be ruled out to have resulted from

20

Berry's work, including its decision *not* to retain Berry or pursue the claims.  (App.

Br. 18)  If this were the standard, every opportunistic attorney could claim

compensation for unsuccessfully pitching their services, thereby roping the

unsuspecting party into having to pay tens (or in Berry's case hundreds) of

thousands of dollars in fees, or face the threat of prolonged litigation that could

cost as much as the claimed fees.  As this Court observed in a related context, such

a policy "would encourage litigants to take unwarranted risks and prolong

litigation simply to avoid paying attorney fees – a predicament that mocks the ideal

of client control."  *King & King, Chartered*, 503 F.3d at 157.

### III.   Plaintiff's Quasi-Contract Claim also Fails as a Matter of Law.

Berry's complaint also fails to state an actionable basis for recovery under a

quasi-contract theory of relief for two reasons.  First, as the District Court found,

the complaint fails to sufficiently plead facts demonstrating that Kraft benefited

from Berry's alleged services.  Second, Berry provided his alleged services for the

self-serving purpose of gaining a business advantage by persuading Kraft to retain

him.

In contrast to an implied-in-fact contract, a quasi-contract is not really a

contract at all.  It is a "[l]egal fiction invented by common law courts to permit

recovery by contractual remedy in cases where, in fact, there is no contract, but

where circumstances are such that justice warrants a recovery as though there had

been a promise." *Jordan Keys & Jessamy*, 870 A.2d at 63 (citation and internal

quotations omitted). Quasi-contract claims are founded on the doctrine of unjust

enrichment, and require proof that (i) the plaintiff conferred a benefit on the

defendant; (ii) the defendant retained the benefit; and (iii) the defendant's retention

of the benefit is unjust. *See*, *e.g.*, *C. Robert Suess v. FDIC*, 770 F. Supp. 2d 32, 44

(D.D.C., 2011). To prevail, therefore, a plaintiff must not only prove that it

provided the defendant a benefit, but that under the circumstances the defendant's

"retention of the benefit without compensat[ion] . . . is unjustified." *Bloomgarden*,

479 F.2d at 211 ("Because quasi-contractual obligations rest upon equitable

considerations, they do not arise when it would not be unfair for the recipient to

keep the benefit without having to pay for it.").

    The District Court dismissed Berry's claim based on the first element – the

complaint's failure to allege a tangible benefit to Kraft beyond mere speculation.[6]

The critical element the District Court did not address as a result, but on which it

could alternatively have relied and which Berry ignores on appeal, is the third –

whether it would be unjust to deny him compensation under the circumstances he

---

[6]    Critical to the District Court's ruling on this point was that Kraft had no
alleged intention of pursuing claims against News and, indeed, was unaware that
such potential claims even existed, until Berry brought them to Kraft's attention
and offered to pursue them on its behalf. (Op. & Or. at 8-9; DA ___.) Berry
obviously pitched the claims to Kraft as having merit, a point on which Kraft
disagreed. Thus, as the District Court observed, Berry's evaluation "did not even
save Kraft the time and expense of evaluating the claim itself or improvidently
proceeding with an unmeritorious claim." (*Id.*)

alleges.

It is "fundamental that [] enrichment is unjust only when the party who has conferred the benefit acted either graciously or altruistically without an obvious, personal motivation to do what he did." *C. Robert Suess*, 770 F. Supp. 2d at 45. Thus, where a plaintiff acts with "an obvious, self-serving motivation to perform the action that may have benefitted the [defendant], it is hard to describe the result to be unfair when the party conferring the benefit had at least as much if not more to gain from the efforts she expended." *Id.*; *Bloomgarden*, 479 F.2d at 211 ("Nor is compensation mandated where the services were rendered simply in order to gain a business advantage.")

It is well settled, therefore, that "no recovery can be had [in *quantum meruit*] for preliminary services that are performed with a view to obtaining business through a hoped-for contract," *Maple Island Farm v. Bitterling*, 209 F.2d 867, 871-72 (8th Cir. 1954) (citations and internal quotation marks omitted), a point this Court emphasized in *Bloomgarden* and others have long before and since echoed. 479 F.2d at 211 (citing cases rejecting attempts to recover under quasi-contract compensation "for activities which the plaintiff engaged in for the purpose of securing future business with the defendant and others"); *see also Tooltrend, Inc. v. CMT Utensil, SRL*, 198 F.3d 802, 806-07 (11th Cir. 1999) (following *Bloomgarden* and holding that manufacturer not unjustly enriched by distributor's advertising

23

and promotion of manufacturer's tools); *Lirtman v. Fuqua Indus., Inc.*, 677 F.2d

548, 551-54 (7th Cir. 1982) (following *Bloomgarden* and holding that plaintiff not

entitled to finder's fee where he performed activities in hope of developing

business); *Rutledge v. Housing Authority*, 411 N.E.2d 82, 86 (Ill. Ct. App. 1980)

("Where preliminary services are conferred for business reasons, without the

anticipation that reimbursement will directly result, but rather, with the expectation

of obtaining a hoped-for contract . . . quasi contractual relief is unwarranted.");

RESTATEMENT (1ST) OF RESTITUTION § 57 (1937) (party who confers benefit on

another is not entitled to restitution merely because his expectation that the other

will enter into a contract with him is not realized).

The circumstances alleged in this case are no different than those alleged in

*Bloomgarden* or the litany of other cases in which courts have rejected similar

claims for *quantum meruit*. Berry does not allege that he brought the claims

against News to Kraft's attention and performed the work he alleges for gratuitous

or altruistic reasons. Of course not. Berry performed the work to solicit Kraft's

business and the fees it would generate, which given the $650 million payment the

complaint alleges News made to several competitors in a different case, he

obviously hoped would be considerable.[7]  The time and effort Berry put into

---

[7]    Indeed, Berry's emphasis throughout his complaint and now on appeal on
the potential impact a Kraft settlement with News might have on settlement values
in his other cases plainly indicates that Berry hoped not only to reap the benefit of

24

preparing an evaluation of the claims was as much, if not more, for his own benefit as it was for Kraft's.  Any incidental benefit Kraft may have derived from Berry's effort to persuade Kraft that it should retain his firm and give him the opportunity to make a sizeable fee can hardly be considered unjust, and thus does not present an actionable basis for relief.

* * *

To determine whether a complaint states a plausible claim for relief, *Iqbal* instructs courts to rely on both common-sense and judicial experience.  *Iqbal*, 129 S. Ct. at 1950.  Berry's speculation and conjecture aside, it is clear from the face of the complaint that he has no factual or legal basis for his claims, and thus should not be allowed to take up further time or resources of the parties or the courts by proceeding with a case in which he has no chance of success.

Berry is an allegedly experienced attorney who specializes in sophisticated and highly complex commercial litigation matters.  He is undoubtedly familiar with the industry custom and practice that marketing pitches to prospective clients – and the time and effort that goes into preparing them – are non-billable.  If the pitch is successful, a law firm will see a return on its investment in terms of new business.  If not, time spent on the pitch is billed to the firm and written off as a

---

the fees he would earn representing Kraft, but also the corresponding increase in settlement values – and hence his own contingency fees in those cases – for claims he was handling on behalf of other clients.

25

business development activity.  When he drafted his complaint to nevertheless demand payment for such business development activities in this case, Berry certainly had in front of him the parties' emails confirming that same arrangement with Kraft, as his complaint quotes directly from them.  Berry must have known, given his 38-years' experience as a complex commercial litigator, that the parties' express understanding that his "evaluation work" was non-billable was contrary to what his complaint alleges.  By nevertheless bringing his complaint and appealing its dismissal, Berry seeks to hoist on Kraft the time and expense of defending a claim for which he knows he has no chance of success.

This is precisely the type of "*in terrorem*" pleading and extortionate litigation tactics *Twombly* sought to curb by retooling the federal pleading standard to require that plaintiffs be able to plead a plausible, as opposed to merely possible, basis in fact for their claims before they are allowed to proceed.  *Twombly*, 550 U.S. at 557-58.  Berry's complaint falls well short of meeting this standard, and the Court should affirm its dismissal.

**IV.    Kraft Respectfully Requests that the Court Remand with Instructions that the District Court Dismiss the Complaint with Prejudice.**

Kraft submits that, upon affirmance of the District Court's dismissal, the Court should remand the matter with instructions that the District Court dismiss

26

Berry's Complaint with prejudice.

It is well established that the dismissal of a complaint without prejudice is generally not an appealable final judgment under 28 U.S.C. § 1291, unless "the plaintiff cannot cure the defect in the complaint or elects to stand on the complaint without amendment." *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381 (3d Cir.1996) (emphasis added). By effectively waiving the right the District Court granted him to amend and pursuing this appeal instead, Berry elected to stand on the allegations of his complaint which, for the reasons stated above, are insufficient to state a claim. Indeed, in light of the parties' express understanding, reflected by the emails discussed above, there are no set of facts Berry could allege consistent with his allegations that would entitle him to relief. Under such circumstances, Berry may no longer seek amendment before the District Court, and his claims should therefore be dismissed with prejudice. *See*, *e.g.*, *Wallingford v. Zenith Radio Corp.*, 310 F.2d 693, 696 (7th Cir. 1962) ("[W]here a plaintiff prosecutes an appeal from an order of dismissal of the complaint, he thereby elect[s] to stand on the complaint and waive[s] any right to request leave to amend.").

## CONCLUSION

For the reasons stated above, Kraft respectfully requests that the judgment of the District Court be affirmed and that Kraft be awarded their costs.

27

## REQUEST FOR ORAL ARGUMENT

Kraft respectfully requests for oral argument on all issues raised herein.

Dated:  June 26, 2014                Respectfully submitted by:

Kelley Drye & Warren LLP
By: /s/ Daniel S. Blynn
Daniel S. Blynn
Kelley Drye & Warren LLP
3050 K Street, N.W., Suite 400
Washington, D.C. 20007
(202) 342-8400

Of Counsel:
Darrell J. Graham
John E. Bucheit
ROESER BUCHEIT & GRAHAM LLC
Two N. Riverside Plaza, Suite 1420
Chicago, IL  60606
(312) 621-0301

*Counsel for Appellee Kraft Foods Group, Inc.*

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 6,772 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

28

because this brief has been prepared in a proportionally spaced typeface

using Microsoft Word 2013 in 14 point Times New Roman.

Dated:  June 26, 2014                    Respectfully submitted by:

                                                      Kelley Drye & Warren LLP

                                                      By: /s/ Daniel S. Blynn
                                                      Daniel S. Blynn
                                                      Kelley Drye & Warren LLP
                                                      3050 K Street, N.W., Suite 400
                                                      Washington, D.C. 20007
                                                      (202) 342-8400

                                                      *Counsel for Appellee Kraft Foods Group, Inc.*

Of Counsel:
Darrell J. Graham
John E. Bucheit
ROESER BUCHEIT & GRAHAM LLC
Two N. Riverside Plaza, Suite 1420
Chicago, IL  60606
(312) 621-0301

29

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on June 26, 2014.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Daniel S. Blynn_____
Daniel S. Blynn